UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEXTEER AUTOMOTIVE
CORPORATION,

                    Plaintiff,

                                              CASE NO. 13-CV-15189
v.                                            HONORABLE GEORGE CARAM STEEH

KOREA DELPHI AUTOMOTIVE
SYSTEMS CORPORATION,

                    Defendant.
_____/

## OPINION AND ORDER

This breach of contract and misappropriation of trade secret case arises out of defendant Korea Delphi Automotive Systems Corporation's ("KDAC") alleged piracy of a half-shaft joint, known as a TriGlide joint, used in automotive steering systems. The dispute is now pending in arbitration in Singapore. Two motions are before the court: (1) plaintiff Nexteer Automotive Corporation's ("Nexteer") motion for a preliminary injunction to enjoin KDAC from manufacturing and selling its half-shaft joint; and (2) KDAC's motion to compel arbitration and to dismiss. Lengthy oral argument and an evidentiary hearing were held on January 27, 2013. In addition, the court has carefully considered the voluminous and well-drafted briefs submitted by counsel on this matter, as well as the many exhibits presented at the evidentiary hearing. For the reasons set forth below, the court finds that it has jurisdiction to hear Nexteer's preliminary injunction motion on the merits, but denies the motion for Nexteer's failure to satisfy the four criteria needed for such relief, most notably, its failure to show irreparable harm. In addition, the court shall grant KDAC's

-1-

motion to dismiss and to compel arbitration with respect to Nexteer's claims seeking permanent injunctive relief.

## I. Factual Background

KDAC, a South Korean company, is a tier one (direct) supplier to automotive manufacturers and is in the business of designing and manufacturing half-shafts and related components.  Nexteer is a steering supplier with its principal place of business in Saginaw, Michigan.  It markets and sells half-shafts to original equipment manufacturers in the United States.  Nexteer alleges that it owns assets assigned to it by Delphi Automotive Systems ("Delphi") including half-shaft technology known as TriGlide.[1]  A half-shaft is an element of the axle, and a half-shaft joint transfers power from the engine to the wheels through a bend in the shaft.  TriGlide is a joint that is incorporated into a front-wheel drive half-shaft to control noise, vibration, and handling.  Delphi spent approximately $8.2 million to develop the TriGlide technology from 2003 to 2006.  During that time, KDAC and Delphi entered into a series of confidentiality agreements while the parties were negotiating for KDAC to become a contract manufacturer for Delphi.  (Complaint, ¶ 10-11).  As part of those agreements, Delphi agreed to share technical information with KDAC which KDAC was to use solely to pursue joint business activities.  Id.

In 2006, Delphi entered into three exclusive supply agreements with KDAC - termed the Epsilon, Gamma, and Delta Agreements - which provided that KDAC was to

---

[1]  Delphi began as a division of GM in 1998 as an automotive components business.  (Doc. 9, Ex. M).  In 1999, GM spun off Delphi to become an independent, publically-held corporation.  Id.  In 2005, Delphi filed for bankruptcy.  Id.  According to Nexteer, in 2009, as part of the bankruptcy reorganization GM acquired Delphi's global steering systems and renamed it Nexteer.  Id.  In 2010, China based Pacific Century Motors ("PCM") acquired Nexteer from GM.  Id.

manufacture and sell TriGlide products exclusively for Delphi and prohibited it from selling similar or derivative products.  Under the 2006 supply agreements, KDAC manufactured half-shafts for Delphi who, in turn, sold them to GM.  (Doc. 9, Ex. A, B, C).[2]  Nexteer alleges the 2006 agreements between KDAC and Delphi have been assigned to it.  KDAC disputes this.  On November 8, 2011, Nexteer entered into a supply agreement with KDAC known as the D2 Agreement which was virtually identical to the 2006 supply agreements between Delphi and KDAC.  Nexteer alleges that KDAC is selling pirated products to Nexteer's own customers and prospective customers in violation of the parties' agreements.  The supply agreements require mandatory arbitration in Singapore (Complaint, Ex. 2, 3, 4 at ¶ 6.11), but also provide a right for either party to seek injunctive relief in this court.[3]  Specifically, the 2006 Epsilon agreement provides:

6.11 Arbitration

(a)    Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("Rules") for the time being in force.  The Tribunal shall consist of one (1) Arbitrator to be appointed in accordance with the Rules.  The language of the arbitration shall be in English.

(b)    Delphi and KDAC acknowledge and confirm that the arbitration award shall be final and binding upon all parties, shall not be subject to any appeal, and shall deal with the question of costs of arbitration and all matters related thereto.  Judgment upon the arbitration award may be entered in any court having jurisdiction over the party against whom enforcement is sought or

---

[2]In its Complaint, Nexteer only seeks relief as to the Epsilon and Delta Agreements, and not the Gamma Agreement.

[3]The January 16, 2006 confidentiality agreement provides that KDAC agrees to submit "to the jurisdiction of any state or federal courts located in the State of Michigan."

such party's property.  **The foregoing, however, shall not preclude the parties from applying for any preliminary or injunctive remedies available under applicable laws for any purpose, including, but not limited to, securing the subsequent enforcement of an arbitration award.**

(Complaint, Ex. 2, ¶ 6.11) (emphasis added).  The other 2006 agreements and the 2011 D2 agreement set forth a virtually identical arbitration clause.  (Complaint, Ex. 3, 4 at ¶ 6.11).[4]

The supply agreements provide that Delphi (later Nexteer) will supply proprietary technical information to KDAC which KDAC may use solely for manufacture of products to be sold to Delphi.  (Complaint, ¶ 41).  Under an "exclusive supply" provision, KDAC was prohibited from selling products using the technical information to any third parties anywhere in the world.  Id. at ¶ 42.  The agreements further provide that KDAC is prohibited from disclosing any "derivative information," which is defined as information developed after Delphi shares technical information which is based on or similar to the technical information.  Id. at ¶ 43.

KDAC alleges that it spent millions of dollars developing its own premium type joint shaft, known as the KDAC Premium Joint ("KPJ") independent of knowledge gained from the Delphi agreements.  KDAC admits began selling the KPJ to Ssangyong in December, 2011 and to Kubota in March, 2012. (Doc. 17, Ex. 1 at ¶ 13).  Nexteer responds that the 2006 Delphi agreements were premised on the understanding that KDAC lacked the

---

[4]All of the supply agreements provide:

 Governing Law.  This Agreement is to be construed according to the laws of Michigan, USA excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law.  (Doc. 7, Ex., 2, 3, Ex. 4 at ¶ 6.10).

capability of developing and manufacturing half-shafts, and that Nexteer shared proprietary information with KDAC so that KDAC could supply parts to Nexteer exclusively.

Both KDAC and Nexteer bid on a premium half-shaft joint project for Chrysler in March, 2012. Id. at ¶ 16. In December, 2012, Chrysler awarded the bid to KDAC for production to begin in January, 2014. Id. On December 21, 2012, Nexteer notified KDAC that it planned to terminate the 2011 D2 agreement. (Doc. 9, Ex. E). KDAC alleges that based upon its purchase of parts from third-parties to enable it to perform under the 2011 D2 agreement, it would be entitled to approximately $6.5 million from Nexteer. In March, 2013, Nexteer sent KDAC a formal cease and desist letter regarding alleged pirated use of Nexteer information in the KDAC half-shaft designs. (Doc. 7, Ex. 5 at ¶ 19). KDAC alleges that Nexteer accused it of violating the supply agreements beginning in March, 2013, solely for the purpose of gaining leverage in the termination negotiations. (Doc. 9 at 7). Nexteer, on the other hand, alleges that it first accused KDAC of violating the confidentiality provisions of their agreements in 2010 when it demanded that KDAC stop displaying the half-shaft joint at an automotive event, (Complaint at ¶ 50-51) and demanded that KDAC stop providing information to a supplier. (Doc. 7, Ex. 5 at ¶15). Nexteer also alleges that it obtained a production sample of KDAC's joint, an alleged derivative of the TriGlide joint, that had been supplied to Ssangyong Motors in late December, 2012. Id. at ¶ 16.

The parties agree that their settlement negotiations broke down in May, 2013. On June 1, 2013, Nexteer initiated arbitration proceedings before the Singapore International Arbitration Centre ("SIAC") alleging breach of the 2011 D2 agreement, misappropriation of trade secrets, tortious interference with business relationships, and unjust enrichment.

(Doc. 9, Ex. H).  In that proceeding, Nexteer alleged that in 2012, KDAC manufactured half-shaft components, using Nexteer's confidential or derivative information, for Ssangyong Motor, Kubota, and Chrysler.  Id. at 3.  Nexteer's motion to have the arbitration decided in an expedited fashion was denied.  (Doc. 9, Ex. K).  An evidentiary hearing in the arbitration is scheduled for March 16, 2015.  (Doc. 9, Ex. L).  While Nexteer sought to have the arbitration procedures expedited, Nexteer did not move for interim injunctive relief as provided for under SIAC rules.  (Doc. 9, Ex. I at 27).  In papers filed as part of the arbitration proceedings, Nexteer requests both injunctive relief and compensatory damages.  (Doc. 9, Ex. H at 3).  On November 4, 2013, Nexteer filed a new notice of arbitration in Singapore arising out of the three 2006 Delphi agreements, and has requested that these cases be consolidated with the earlier filed case arising out of the 2011 D2 agreement.  (Doc. 9, Ex. N).

In the fall of 2013, Nexteer alleges that it learned that KDAC had been awarded new premium half-shaft business for Chrysler's UF/UT program, and that serial production on that program is scheduled to begin in February, 2014.  (Doc. 7, Ex. 5 at ¶ 19).  Nexteer also seeks to enjoin KDAC from entering into a supply contract with Chrysler, known as the RU program, which is still in its sourcing phase.  (Doc. 21, Ex. A at 8).  KDAC maintains that Nexteer has known about the UF/UT program since at least December, 2012 when Chrysler chose KDAC over Nexteer for that project.  At oral argument, KDAC represented that Nexteer also has known about KDAC's bid on the RU program since August, 2013, but Nexteer alleges it did not know that KDAC was a bidder on that project until receiving the affidavit of KDAC executive managing director, Youngchul Park, on January 16, 2014.  (Doc. 32 at ¶ 8).

-6-

On December 6, 2013, Nexteer filed a Complaint for injunctive relief in Oakland County Circuit Court. KDAC removed the case here on the basis of diversity jurisdiction on December 23, 2013. The next day, Nexteer filed a motion for a preliminary injunction. On December 30, 2013, KDAC filed a motion to compel arbitration and to dismiss. On December 31, 2013, KDAC filed a motion for interim or injunctive relief before the SIAC asking the arbitrator to rule that Nexteer is barred from seeking injunctive relief in this court. On January 29, 2014, the arbitrator granted KDAC's motion and ordered Nexteer to "cease pursuit" of its claims for injunctive relief here as it relates to the 2011 D2 Agreement. (Doc. 34, Ex. A at ¶ 65). KDAC filed a motion to compel and enforce that arbitration award on January 30, 2014. (Doc. 34).

## II. KDAC's Motion to Dismiss

KDAC argues that this court should dismiss this action because arbitration is currently pending between the parties in Singapore. Specifically, KDAC relies upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, which provides that a federal court shall stay an action which is subject to arbitration under the parties' agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Id. Section 4 gives the district court the authority to compel arbitration. 9 U.S.C. § 4. In this case, KDAC does not seek merely to stay the action pending arbitration but to dismiss the action. The Sixth Circuit has condoned dismissal, rather than merely a stay, under §

-7-

3 where the only thing left for the district court to do is to execute a judgment.  Arnold v. Arnold Corp. - Printed Comm. for Business, 920 F.2d 1269, 1275 (6th Cir. 1990).  When all of the issues before the district court are subject to arbitration, the district court may dismiss the action.   Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000).

Nexteer argues that KDAC has failed to articulate whether it is proceeding under Federal Rule of Civil Procedure 12(b)(6), in which case this court is barred from considering matters outside the pleadings, or under Federal Rule of Civil Procedure 56 in which case, the court must advise the parties it is converting the motion into one for summary judgment and allow the parties time to conduct discovery.  KDAC responds that it is proper for this court to consider matters outside the pleadings in ruling on a motion to compel arbitration under 9 U.S.C. § 3, whether the court construes the motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), or simply analyzes the matter under the FAA.  The Seventh Circuit has summarized the different approaches courts have taken over the issue of how to characterize motions to compel arbitration, noting that some courts treat motions to compel as a Rule 12(b)(1) motion, others as a 12(b)(6) motion, and some as a separate creature falling outside the Rule 12 rubric entirely.  Continental Cas. Co. v. American Nat'l Ins. Co., 417 F.3d 727, 732 (7th Cir. 2005) (collecting cases).  Other courts have held that a motion to stay proceedings and/or to compel arbitration requires the court to use the same standard as a motion for summary judgment, thus allowing the court to consider matters outside the pleadings.  See, e.g. Kovac v. Superior Dairy, Inc., 930 F. Supp. 2d 857, 864 (N.D. Ohio 2013) (collecting cases).  The court agrees with those courts finding that the issue of whether to compel arbitration is governed by the FAA itself, not by

a Federal Rule of Civil Procedure, which provides by statute the standard of review this court should apply.[5]  9 U.S.C. § 4.  Specifically, Section 4 provides, in relevant part:

> [a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.  The Sixth Circuit has held that when a party files a motion to compel arbitration, the party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate.  The required showing mirrors that required to withstand summary judgment in a civil suit."  Great Earth Cos, Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002).  Although it appears proper for this court to consider matters outside the pleadings, this court has not done so in deciding KDAC's motion to compel arbitration, but limits its analysis to the four corners of the agreements attached as exhibits to Nexteer's complaint.

     The Sixth Circuit has identified four factors that courts should consider when addressing a motion to compel arbitration under the FAA:

> First, [the court] must determine whether the parties agreed to arbitrate; second, [the court] must determine the scope of that agreement; third, if federal statutory claims are asserted, [the court] must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, [the court] must determine whether to stay the remainder of the proceedings pending arbitration.

---

     [5]See e.g. Winn v. Tenet Healthcare Corp., No. 10-02140, 2011 WL 294407, *2, n.2 (W.D. Tenn. 2011).

Glazer v. Lehman Brothers, Inc., 394 F.3d 444, 451 (6th Cir. 2005) (citations omitted).  All but the third factor are relevant here.  In determining whether to dismiss or stay an action to compel arbitration under the FAA, the court must examine the contract to determine if the parties agreed to arbitrate the dispute in issue.  Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000).  Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration and any ambiguities in the contract should be construed in favor of arbitration.  Id. at 715 (citing Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983)).  In construing the scope of the scope of the parties' agreement to arbitrate, the court follows ordinary contract principles, subject to the rule that "any doubts regarding arbitrability should be resolved in favor of arbitration."  Fazio v. Lehman Brothers, Inc., 340 F.3d 386, 392-93 (6th Cir. 2003).

A fair reading of the four corners of the parties' agreements leads to the conclusion that Nexteer may petition this court for preliminary injunctive relief.  The contracts specifically provide that the mandatory arbitration clause "shall not preclude the parties from applying for *any preliminary or injunctive remedies* available under applicable laws for *any purpose.*"  (Complaint, Ex. 2, 3, 4 at ¶ 6.11) (emphasis added).  The above quoted provision is extremely broad and requires this court to consider Nexteer's motion for preliminary injunction.

In addition to the contractual basis for this court to exercise jurisdiction over the preliminary injunction motion, Sixth Circuit precedent requires the same result.  The Sixth Circuit addressed the issue of whether a district court may grant preliminary injunctive relief where the underlying dispute is subject to mandatory arbitration in Performance Unlimited v. Questar Publishers, 52 F.3d 1373 (6th Cir. 1995).  In that case, although the agreement

-10-

at issue provided for mandatory arbitration and did *not* expressly allow the district court the power to grant injunctive relief, the Sixth Circuit, nevertheless, held that the district court had inherent subject matter jurisdiction to enter a preliminary injunction if the plaintiff met the four-factor test to qualify for such relief. Id. at 1380. The suit involved a dispute over whether defendant owed royalties arising out of a licensing agreement for the sale of a children's book. Id. at 1376. The licensor alleged that unless the book publisher was required to pay royalties by way of an injunction pending the outcome of the arbitration, it would go out of business. Id. at 1381. The Sixth Circuit found this argument compelling because if the injunction was not entered and the licensor ultimately prevailed, it would be a Pyrrhic victory. Id. at 1380. The court ruled:

> We further conclude that a grant of preliminary injunctive relief pending arbitration is particularly appropriate and furthers the Congressional purpose behind the Federal Arbitration Act, where the withholding of injunctive relief would render the process of arbitration meaningless or a hollow formality because an arbitral award, at the time it was rendered, could not return the parties substantially to the status quo ante.

Id. (internal quotations and citations omitted).

The Sixth Circuit analyzed the four criteria for granting injunctive relief and found that the relief was warranted. The court recognized that money damages rarely amount to "irreparable injury," but found that financial damages may satisfy that prong where the "potential economic loss is so great as to threaten the existence of the movant's business." Id. at 1382. The court narrowly tailored the injunctive relief awarded, however, holding that defendant publisher was obligated to pay royalties only until the arbitration proceedings began and the arbitrator could then decide how best to maintain the status quo. Id. at 1386. As arbitration proceedings in this case have already begun, and there is no dispute

that Nexteer may apply to the arbitrator for injunctive relief, KDAC argues this court should deny Nexteer's request here and defer to the arbitrator.  Nexteer, however, argues that unlike the situation in <u>Performance Unlimited</u>, the contracts here expressly provide for broad injunctive relief in a court of law outside arbitration proceedings.  Based on the parties' express agreements that they may seek preliminary injunctive relief in a court of law, and based on the Sixth Circuit's holding in <u>Performance Unlimited</u> that the district court has inherent subject matter jurisdiction to consider a motion for preliminary injunction even absent such a provision, this court shall consider Nexteer's motion for a preliminary injunction on the merits.

The cases KDAC relies upon for its argument that the "carve out" provision here does not grant Nexteer the "right" to seek preliminary injunctive relief outside the arbitral process are inapposite.  In <u>Manion v. Nagin</u>, 255 F.3d 535, 539 (8th Cir. 2001), for example, the district court considered plaintiff's motion for preliminary injunction on the merits based upon a similar carve out provision, and the Eighth Circuit affirmed.  That case also involved a similar provision to the one at issue here, which provided for injunctive relief "in case of any breach."  The Eighth Circuit ruled that such language does not require automatic entry of interim injunctive relief upon proof of breach unless plaintiff also satisfies the traditional requirements for preliminary injunctive relief.  <u>Id.</u>  As in <u>Manion</u>, the carve out provision here requires the court to consider Nexteer's motion for preliminary injunctive relief based on the traditional four-factor test governing such motions, and contrary to Nexteer's claim, interim injunctive relief cannot be premised solely on proof of breach of the underlying agreements.

In some other cases cited in KDAC's reply brief, courts held that similar carve out provisions were limited to claims for preliminary injunctive relief in aid of arbitration, and

could not be used to circumvent the parties agreement to arbitrate the dispute on the merits by allowing claims for *permanent* injunctive relief to go forward outside the arbitral process. See Remy Amerique, Inc. v. Touzet Distr. S.A.R.L., 816 F. Supp. 213, 218 (S.D.N.Y. 1993); 624 Art Holdings, LLC v. Berry-Hill Galleries, Inc., 2012 N.Y. Misc. LEXIS 6440, *24 (S. Ct. N.Y. June 7, 2012).  For the reasons discussed later in this opinion, the court adopts the reasoning of these courts for the conclusion that Nexteer's claims here for *permanent* injunctive relief must be decided in arbitration, but under their rationale, this court may address the question whether Nexteer is entitled to preliminary injunctive relief on the merits.

The cases relied upon by KDAC do not support the proposition that this court lacks jurisdiction to even consider Nexteer's motion for a preliminary injunction, but in those cases injunctive relief was denied because the relief requested would not serve to preserve the status quo pending arbitration.  See e.g. Pisgah Labs, Inc. v. Pharmaforce, Inc., No. 1:05CV334, 2005 U.S. Dist. LEXIS 30523, *7 (W.D.N.C. Nov. 22, 2005).  Although KDAC is right to point out that in Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 725-26 (9th Cir. 1999), the Ninth Circuit affirmed the denial of preliminary injunctive relief where the parties agreed to binding arbitration and the rules of arbitration allowed for the entry of interim injunctive relief, in that case, unlike here, there was no specific provision in the partes' agreement allowing for preliminary injunctive relief in the courts.

Courts have considered plaintiffs' motions for preliminary injunctive relief, despite the fact that arbitration was ongoing between the parties, where the parties' agreements contained a "carve out" provision like the one at issue here, allowing the court to consider requests for injunctive relief.  See e.g. Remedy Intelligent Staffing, Inc. v. Metro. Empl. Corp. of Am., No. 08-11369, 2008 U.S. Dist. LEXIS 99550,  (D. Mass. Dec. 5, 2008). Nexteer

-13-

relies on Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran, 67 F. Supp. 2d 764 (E.D. Mich. 1999), an opinion authored by this court, to support its opposition to KDAC's motion to dismiss and in support of its motion for interim injunctive relief.  In Ran, this court granted Merrill Lynch's motion for preliminary injunction to enjoin its former stockbrokers from soliciting their firm's clients where the employment agreements specifically called for injunctive relief in the case of breach of contract, or to maintain the status quo pending arbitration.  Id. at 770, 781.  This court narrowly tailored the preliminary injunction entered, however, providing that the injunction remained in force only until arbitration proceedings were commenced.  Id. at 783.

KDAC responds that under the holding of Ran, this court should deny interim injunctive relief because arbitration proceedings have already begun.  While KDAC's argument is persuasive, this court considers the status of arbitration proceedings to date as one factor in determining whether Nexteer has shown irreparable harm in support of its motion for preliminary injunction.  The sole fact that arbitration proceedings have been initiated does not foreclose the court from considering Nexteer's motion for preliminary injunction.  Having found that the express provision of the parties' agreements, the Sixth Circuit's holding in Performance Unlimited, and case law from other courts regarding similar "carve out" provisions permit this court to consider Nexteer's motion for preliminary injunction on the merits, the court turns now to that question.

## III. Nexteer's Motion for a Preliminary Injunction

**A.    Standard of Law**

When considering a motion for preliminary injunction, a district court must balance four factors:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others; and

(4) whether the public interest would be served by the issuance of the injunction.

Certified Restoration v. Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (citations omitted).  These four considerations are "factors to be balanced, not prerequisites that must be met." Id. (citations and quotations omitted).

**B.    Analysis**

**1.    Nexteer Has Not Suffered Irreparable Injury**

"A finding of irreparable harm is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction." Wells Fargo & Co. v. WhenU.com, Inc., 293 F. Supp. 2d 734, 771 (E.D. Mich. 2003) (internal quotations and citations omitted).  Nexteer has failed to meet its heavy burden here.  KDAC has presented evidence that Nexteer has known of the allegedly infringing activity since at least December, 2012 when Chrysler awarded the UF/UT program to KDAC.  Although Nexteer claims that it learned that KDAC had been awarded that program in the fall of 2013, by Nexteer's own admissions, it knew of KDAC's alleged infringing activity based upon the production sample it obtained in late December, 2012, which it believed to be a TriGlide derivative that KDAC was supplying to Ssangyong Motors.  (Doc. 7, Ex. 5 at ¶ 16).  KDAC argues that Nexteer knew of its alleged infringing activity much earlier even than the December, 2012 date, as in its own briefings filed here, Nexteer accuses KDAC of misusing confidential information twice in 2010 and in addition, KDAC claims that Nexteer likely knew that KDAC was bidding

on the Chrysler UF/UT program based upon an internet posting in August, 2012. (Doc. 17, Ex. 2 at ¶ 10-11). Although Nexteer claims it did not learn conclusively that KDAC was selling an allegedly infringing half-shaft joint to Chrysler until the fall of 2013, Nexteer admits that it "had suspicions about what KDAC was doing with Chrysler dating back to late 2012 and early 2013" and filed its June 1, 2013 notice of arbitration based upon its belief that KDAC was under contract with Chrysler to supply halfshaft joints. (Doc. 21, Ex. A at ¶ 12-13).

Nexteer further alleges that in late, 2012, it learned of KDAC's alleged infringing activity from production samples obtained from several of its competitors which it alleges proved conclusively that KDAC had pirated the Nexteer TriGlide joint. Id. at ¶ 17. While Nexteer tries to make much of the fact that it did not learn that KDAC was bidding on an RU project with Chrysler until KDAC responded to its motion for a preliminary injunction on January 16, 2014, by Nexteer's own admissions, it knew of KDAC's alleged infringing activity involving other suppliers at least a year earlier. Five months after filing its notice of arbitration for alleged breach of the 2011 supply agreement, Nexteer filed a notice of arbitration with respect to the 2006 supply agreements on November 4, 2013. (Doc. 18, Ex. 7). While this arbitration proceeding is much closer in time to Nexteer's filing for injunctive relief here, the fact remains that arbitration proceedings as to the 2011 agreement had begun much earlier, and this later filing does not change the court's analysis that Nexteer waited too long to seek injunctive relief here in support its claim of irreparable harm.

Nexteer's delay of over one-year prior to seeking injunctive relief weighs against a finding of irreparable harm. See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., 511 F. App'x 398, 405 (6th Cir. 2013). Nexteer pursued its breach of contract claims by

pursuing the arbitration that was mandated by the supply agreements by filing its notice of arbitration on June 1, 2013.  Nexteer failed to seek preliminary injunctive relief in that forum, although such a remedy was available there, and delayed another six-months after arbitration proceedings were initiated to seek a preliminary injunction here.  Under these circumstances, Nexteer's significant delay in seeking injunctive relief weighs strongly against a finding of irreparable harm.

Nexteer argues that irreparable harm must be presumed because the contract so provides in the event of a breach.  Specifically, the agreements provide that "money damages would not be sufficient remedy" for any breach of the contract and that Delphi/Nexteer "shall be entitled to . . . injunctive or other equitable relief as a remedy for any such breaches."  (Doc. 7, Ex. 2, 3, 4 at ¶ 5.5).  In addition to the fact that this court has made no determination as to whether or not a breach has occurred, numerous courts have held that such a contractual provision does not alter the court's obligation to analyze whether the party seeking an injunction has proven irreparable harm.  See, e.g., Baker's Aid, a Division of M. Raubvogel Co. v. Hussmann Foodservice Co., 830 F.2d 13, 16 (2d Cir. 1987) ("contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate"); Int'l Ass'n of Plumbing & Mechanical Officials v. Int'l Conf. of Building Officials, 1996 WL 117447, at *2, 79 F.3d 1153 (9th Cir. 1996) (table only) (contractual concession does not alter court's obligation to make specific factual finding that such injury is irreparable and might actually occur absent an injunction).  Nexteer is not relieved of its obligation to prove irreparable harm by contractual provision, and Nexteer has failed to do so here.  Even if the court were

-17-

to consider the contractual concession as one factor in support of preliminary injunctive relief, it is insufficient to establish irreparable harm.

Nexteer also argues that money damages would not make it whole as it will suffer loss of customer goodwill and loss of the ability to compete fairly in the marketplace.    In support of this argument, Nexteer relies on Skvarla's affidavit wherein he states that KDAC's sale and threatened sale of allegedly pirated half-shafts threatens Nexteer with loss of business, loss of market share, loss of customer goodwill, dilution of their brand, and dilution of proprietary information.  (Doc. 21, Ex. A at ¶ 18).  In Certified Restoration Dry Cleaning Network, the Sixth Circuit reiterated the rule that "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." 511 F.3d at 550 (citations omitted).  In that case, the Sixth Circuit ruled plaintiff-franchisor was entitled to a preliminary injunction to enjoin defendant-franchisee from breaching a non-compete agreement after terminating their franchise agreement.  Id.  The Sixth Circuit found the franchisor proved irreparable harm because it would be difficult to quantify the monetary damages arising from the loss of customer goodwill.  Id.  The Sixth Circuit has ruled that "loss of customer goodwill often amounts to irreparable injury because damages flowing from such losses are difficult to compute."  Basicomputer Corp. v. Scott, 973 F.2d 507, 512 (6th Cir. 1992).

Nexteer relies on FirstEnergy Solutions Corp. v. Flerick, 521 F. App'x 521 (6th Cir. 2013), where the Sixth Circuit affirmed the district court's entry of a preliminary injunction to enjoin a salesman from soliciting his former customers in breach of his non-compete agreement, finding irreparable harm because the plaintiff-employer might never recover that lost business, and those damages would be difficult to quantify. Id. at 529.  KDAC responds

-18-

that Nexteer cannot show irreparable harm as it is seeking lost profits in the arbitration proceeding which amount to money damages.  KDAC also claims that Nexteer has failed to show that it will lose goodwill or competitive advantage.

This court finds that Nexteer has failed to show that its alleged loss of customer goodwill cannot be adequately compensated by money damages.  In Merrill Lynch v. E.F. Hutton, 403 F. Supp. 336 (E.D. Mich. 1975), for example, the court ruled that Merrill Lynch was not entitled to a preliminary injunction to enjoin account executives who left their employment for a competitor from using a client list in violation of confidentiality agreements. Id. at 345. The court ruled plaintiff failed to show irreparable harm, in part, because plaintiff could not show that alleged lost commissions amounted to more than one percent of its total commission revenues.  Id. at 344.  Using a similar analysis in Performance Unlimited, 52 F.3d at 1382, the Sixth Circuit found preliminary injunctive relief appropriate where the loss of royalties in dispute would drive the plaintiff out of business.  Whether or not the loss of customer goodwill amounts to irreparable harm often depends on the significance of the loss to the plaintiff's overall economic well-being.  Nexteer has failed to show that the loss of Chrysler as a customer on the UF/UT program, or possibly on the RU project, threatens its overall financial health to such a degree that such losses cannot be made whole with money damages.  According to its website, Nexteer has 20 manufacturing plants, five regional engineering centers, 10 customer service centers, and three vehicle performance centers. It appears to the court that Nexteer is a substantial company and would not be driven out of business in the absence of injunctive protection.  Under these circumstances, Nexteer has failed to show irreparable harm in as much as lost profits may be quantified, and a possible loss of customer goodwill does not threaten complete destruction of its business.

Finally, the court considers Nexteer's argument that irreparable harm should be presumed because it has made a strong showing of likelihood of success on the merits, and proof of trade secret misappropriation constitutes irreparable harm.   For the reasons discussed later in this opinion, the proofs conflict on this point, and the court has been unable to make a determination of Nexteer's likelihood of prevailing at this early juncture. Thus, this factor does not weigh in favor of entering a presumption of irreparable harm.

## 2.   The Record Conflicts as to Whether Nexteer Has Shown a Likelihood of Success on the Merits

Nexteer argues that KDAC's piracy of its TriGlide technology is so blatant that it is obvious even to the naked eye.   It relies on photographs of its TriGlide half-shaft joint juxtaposed against KDAC's version of the premium half-shaft joint (Doc. 7, Ex. 5), and on the affidavit of William Skvarla, engineering manager, who avers that KDAC's joint is pirated. Id.   Nexteer also relies on voluminous engineering reports, halfshaft video animation, and other evidence to suggest that KDAC's premium half-shaft joint is pirated from Nexteer's TriGlide halfshaft joint.   At oral argument, Nexteer's counsel introduced many premium joints, both those of Nexteer and KDAC, as well as those of other competitors to support the proposition that the KDAC joint was substantially similar to, or derivative, of Nexteer's premium half-shaft joint.

KDAC, on the other hand, argues that its half-shaft joint was independently engineered and is distinguishable from Nexteer's joint.   In support of this claim, it relies on the affidavit of Jindae Park, managing director of the Steering and Driveline Division,

Technical Center of KDAC as set forth in its sealed response brief. (Doc. 17, Ex. 1).[6] Park's eighteen-page affidavit sets forth the production history of its joint and a highly technical comparison of the two joints including numerous engineering drawings. Nexteer responds that it need not prove that the joints are identical under the exclusive supply agreements, only that they are "similar products." Nexteer claims that it has proven that the products are not only similar, but "derivative" in violation of the parties' agreements.

The analysis of whether KDAC's half-shaft joint is pirated is an extremely complex factual inquiry. Based on the papers, affidavits, and evidence now before the court, while it appears quite possible that the KDAC premium half-shaft joint copies key aspects of the Nexteer TriGlide joint, at this early juncture, the court cannot yet determine whether Nexteer is likely to prevail on the merits. Thus, the court focuses its analysis of the other three criteria for granting injunctive relief.

### 3. Harm to Others Weighs Against Injunctive Relief

KDAC argues that it will be irreparably harmed if the injunction is entered. KDAC states that Chrysler is set to begin production of the new Chrysler 200 in March, 2014, and KDAC has already begun shipping parts to Chrysler plants. KDAC is also supplying its joint to Ssongyang. If the injunction is entered, KDAC argues that it would cause a production shutdown for both manufacturers. In support of this claim, KDAC relies on the affidavit of Youngchul Park, executive managing director of sales and marketing for KDAC. (Doc. 17,

---

[6]Nexteer argues that Jindae Park was a key KDAC engineer on the Nexteer project, and the very fact he admits to playing a lead role in developing KDAC's KPJ joint is proof of piracy. Nexteer also argues that additional proof lies in the fact that Hyun Lee's name appears on several KDAC patent filings after he spent 18-months at Nexteer's headquarters.

Ex. 2). According to Park, total sales revenue from the sale of products using KPJ half-shaft joints with manufacturers in 2014 is expected to reach $37.1 million. Id. at ¶ 8. Nexteer argues that KDAC will not be harmed by an order precluding it from engaging in conduct prohibited by the parties' contracts. Nexteer also argues that KDAC has not offered evidence of the harm alleged to Chrysler, and that its own efforts to discover such information have been thwarted by KDAC's motion for a protective order. Based on the extreme consequences that granting the interim relief Nexteer seeks would wreak on innocent third-party manufacturers, this factor weighs strongly in favor of denying injunctive relief.

### 4.    Public Interest Weighs Against Injunctive Relief

Nexteer argues the public interest will be served by entering the injunction because the public has an interest in having contracts enforced. KDAC argues that issuance of the injunction would thwart the policy that injunctive relief is an extraordinary remedy to be used to maintain the status quo until a trial on the merits can be held. The public's interest would not be served by granting a preliminary injunction, which would not merely maintain the status quo, but which would grant Nexteer a near total victory, and undo KDAC's contracts with two manufacturers, before the complex factual issues underlying this dispute can be fully developed and analyzed in the arbitration proceedings the parties agreed upon for resolution of this matter. This factor weighs in favor of denying injunctive relief. For the reasons stated above, Nexteer's motion for a preliminary injunction shall be denied. The denial of preliminary relief shall not affect the rights of the parties to seek and obtain such relief in arbitration.

### IV. Nexteer's Claim for Permanent Injunctive Relief

Having determined that Nexteer is not entitled to preliminary injunctive relief, the court turns now to the question of whether KDAC's motion to dismiss and to compel arbitration should be granted as to Nexteer's remaining claim for permanent injunctive relief and finds that it should. In deciding this issue, the court is mindful that KDAC has not distinguished between Nexteer's claim for permanent, as opposed to preliminary, injunctive relief in its motion to dismiss and to compel arbitration. Based on the substantial record now before this court, however, the court finds that it may adjudicate this issue.[7]

KDAC and Nexteer agreed to binding arbitration in their supply agreements. Although the parties included a "carve out" provision allowing for either side to seek injunctive relief outside the arbitral process, that provision should not be read so broadly as to render the mandatory arbitration provision a nullity. Canons of contract construction require this court to give every clause of the parties' contract meaning, rendering none superfluous, and the contract interpretation Nexteer urges here, namely that it may seek permanent injunctive relief here while the arbitration is pending, would do just that by essentially voiding the parties' mandatory arbitration provision. The agreements cannot be interpreted to mean that the parties intended for their contractual dispute to be resolved in two forums simultaneously which would involve the significant risk of inconsistent findings and rulings. The "carve out" provision expressly provides that the mandatory arbitration

---

[7]On January 31, 2014, Nexteer filed a response to KDAC's motion to enforce the arbitrator's order that Nexteer "cease and desist" pursuit of injunctive remedies with respect to the 2011 supply agreement in this court. In that response, Nexteer asserts, seemingly for the first time, that it is not seeking a permanent injunction, but only a preliminary injunction, and that the ultimate decision on the merits will be left to the arbitrator.

provision "shall not preclude the parties from applying for any preliminary or injunctive remedies *available under applicable laws."* (emphasis added).   The court is aware of no law, interpreting arbitration agreements like those presented here, which would allow Nexteer to seek permanent, as opposed to interim relief, outside the arbitration forum while the arbitrator is adjudicating the same issue.

Moreover, given that resolution of this dispute involves the interpretation of multiple provisions of multiple agreements, and extensive fact finding in this complex and highly disputed history of the development of half-shaft joints on both sides, principles of comity and fairness require that the arbitration proceedings before the SIAC go forward unhindered by the risks of litigating this matter in two forums.   The rules of the SIAC specifically provide for injunctive relief, and Nexteer has sought that relief in the arbitration proceedings.   Were this court to allow Nexteer's claim for permanent injunctive relief to go forward here, the arbitrator would retain the power to modify and reverse any decisions made in this court because by contract, the arbitrator makes the ultimate decision.   Yet another reason exists for dismissing Nexteer's remaining claims for injunctive relief.   The procedures for conducting discovery provided for under the Federal Rules of Civil Procedure differ from the provisions of the SIAC.   As Nexteer agreed to arbitrate its disputes in that forum, it should not be allowed to circumvent those rules by litigating the same issue in federal court.

Few cases present the facts as in this case, where a party, agreeing to mandatory arbitration, seeks to continue on two tracks - one in arbitration, and the other in federal court, except for those seeking short term interim relief.   KDAC is correct to point out that the cases Nexteer relies upon in support of its two-track filings primarily involve preliminary injunctive relief entered only until arbitration proceedings commence. E.g. Ran, 67 F. Supp.

-24-

2d at 778-79 (granting preliminary injunctive relief where arbitration had not yet begun); Motorola Credit Corp. v. Uzan, 274 F. Supp. 2d 481, 509-10 (S.D.N.Y. 2003) (denying defendant's motion to dissolve preliminary injunction where case not subject to arbitration), rev'd on other grounds, 388 F.3d 39 (2d Cir. 2004).

Judge Rosen of this district, however, as KDAC points out, recently addressed a similar matter and granted defendant's motion to dismiss in Kwansny Co. v. AcryliCon Int'l, No. 09-13357, 2010 WL 2474788 (June 11, 2010 E.D. Mich. 2010). In that case, Judge Rosen granted plaintiff's motion to dismiss defendant's counterclaims based on binding arbitration even where the licensing agreement at issue contained a carve out provision, like the one at issue here, expressly authorizing the parties to "pursu[e] injunctive relief where appropriate in any court of competent jurisdiction." Id. at *7. In that case, unlike here, defendants did not seek a preliminary injunction but merely sought injunctive relief as a potential remedy on one of its counterclaims. Judge Rosen explained that "the language in the Agreement preserving the parties' opportunity to seek injunctive relief cannot be viewed as overriding the parties' stated intent to arbitrate any disputes arising from the Agreement, but rather as supportive of this agreement to arbitrate." Id. Judge Rosen found it significant that defendants had not moved for preliminary injunctive relief and that nothing in the record suggested "such relief is necessary to preserve the viability of the parties' chosen method of dispute resolution, the arbitration process." Id.

Judge Rosen's reasoning is true to the Sixth Circuit's analysis in Performance Unlimited; where the parties have agreed to arbitrate their dispute, injunctive relief should be granted only when necessary to ensure that the arbitration process is not rendered meaningless. Such relief is generally only appropriate in a preliminary injunction award

-25-

designed to maintain the status quo pending arbitration.   Any other holding here, would eviscerate the parties' agreement to submit to binding arbitration.      Allowing this matter to proceed simultaneously in two forums is fraught with problems, not the least of which is the possibility of inconsistent pretrial rulings, as well as ultimate verdicts that may be at odds. These potential problems are born out in the Arbitrator's recent opinion ordering Nexteer to cease and desist from pursuing its claims for injunctive relief here.   While the Arbitrator lacks the authority to determine this court's jurisdiction, a fact admitted, (Doc. 34, Ex. A at ¶ 43), his observations about the potential pitfalls of allowing the case to move forward in two forums ring true, and guide this court's ultimate conclusion that Nexteer cannot seek permanent injunctive relief in this court, while simultaneously pursuing the same relief in arbitration.   The arbitrator rejected Nexteer's argument that it can seek any type of injunctive relief, whether preliminary or permanent, outside the arbitral process, citing the following difficulties:

> I cannot accept Nexteer's submission that the final sentence of Article 6.11(b) creates an unqualified right on the part of either party to seek preliminary or injunctive remedies in any forum willing to find jurisdiction. . . . On Nexteer's construction, it would be possible for either party to obtain not only preliminary remedies but any type of injunction, including final injunctions, in different fora.  This would undermine the authority and efficiency of international arbitration as a single forum of dispute resolution and create the risk of conflicting decisions and forum-shopping by the parties.  It would also open to abuse as parties could seek injunctive relief in multiple fora with a view to undermining the arbitral process.

Id. at ¶ 23.  While this court disagrees with the arbitrator's view on Nexteer's right to pursue preliminary injunctive relief in federal court, the court agrees with his reasoning that the 2011 agreement, and likewise the 2006 agreements which he did not consider, do not allow Nexteer to pursue permanent injunctive relief both from the arbitrator and from this federal

court simultaneously.  Accordingly, this court shall grant KDAC's motion to dismiss and to compel arbitration as to Nexteer's claim for permanent injunctive relief.

### V. This Matter Should Be Dismissed Without Prejudice

Finally, the court considers whether Nexteer's complaint should be dismissed or stayed pending arbitration.  The Sixth Circuit has held that a matter may be dismissed when there is nothing left for the district court to do, but to execute a judgment.  Arnold, 920 F.2d at 1275.  When all of the issues before the district court are subject to arbitration, the court may dismiss the case.  Green, 200 F.3d at 973.  Because all of the issues remaining before this court are subject to mandatory arbitration, this court shall grant KDAC's motion to dismiss.

### VI. Conclusion

For the reasons stated above, KDAC's motion to dismiss and to compel arbitration (Doc. 9) hereby is DENIED IN PART as to Nexteer's motion for preliminary injunction which the court has considered on the merits.  Having failed to meet the four-criteria required for preliminary injunctive relief, IT IS ORDERED that Nexteer's motion for a preliminary injunction (Doc. 7) hereby is DENIED.  KDAC's motion to dismiss and to compel arbitration (Doc. 9) hereby is GRANTED IN PART as to the rest of Nexteer's complaint.  These rulings shall not affect the rights of the parties to seek preliminary and/or permanent injunctive relief in arbitration.

IT IS FURTHER ORDERED that Nexteer's complaint hereby is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Nexteer's emergency motion for protective order (Doc. 23), KDAC's motion to quash subpoenas (Doc. 11), KDAC's motion to confirm and

enforce arbitration award (Doc. 34), and KDAC's motion to strike (Doc. 36) hereby are

DENIED AS MOOT.  This court shall retain jurisdiction to consider motions to vacate, set

aside, or enforce arbitration awards.

**IT IS SO ORDERED**.

Dated:  February 13, 2014

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 13, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---