UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEXTEER AUTOMOTIVE
CORPORATION,

              Plaintiff,          CASE NO. 13-CV-15189
                                      HON. GEORGE CARAM STEEH

v.

KOREA DELPHI AUTOMOTIVE
SYSTEMS CORPORATION
(now ERAE AUTOMOTIVE
SYSTEMS CO., LTD.)

              Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR
WITHDRAWAL OF FUNDS (Doc. 79) and DENYING
PLAINTIFF'S MOTION FOR ATTORNEY FEES (Doc. 77)**

## I. Overview

Now before the court are two motions. First, Defendant Korea Delphi

Automotive Systems Corporation's ("KDAC"), now known as erae

Automotive Systems Co. Ltd. ("erae") (lowercase in title), filed a motion to

withdraw $3,000,000 previously deposited with the Clerk of the Court as

security for a stay order. (Doc. 79). For the reasons set forth below, erae's

motion for the withdrawal of funds shall be GRANTED. The second motion

now pending is Plaintiff Nexteer's motion for attorney's fees expended to

obtain confirmation and enforcement of the Arbitral Award here.  For the reasons set forth below, Nexteer's motion for attorney's fees (Doc. 77) shall be DENIED.

## II. Background

This breach of contract and misappropriation of trade secret case arises out of Defendant erae's alleged piracy of a halfshaft joint, known as a TriGlide joint, owned by Plaintiff.  The halfshaft joint is used in automotive steering systems.  Per the parties' contracts, the matter was arbitrated in Singapore.  On December 28, 2016, the sole Arbitrator, Dr. Wolfgang Peter of Switzerland, issued his final Award.  The Arbitrator found that erae's competing premium joint, the KPJ, was manufactured using Nexteer's proprietary information in violation of the parties' 2006 and 2011 agreements.  As a result of this finding, the Arbitrator awarded plaintiff Nexteer Automotive Corp. ("Nexteer") $5,876,666 consisting of (1) $3,328,760 as disgorgement for past sales of defendant's KPJ halfshaft, with an additional $218,861 in pre-judgment interest, (2) $2,103,572 for Nexteer's legal fees, (3) $220,492 for Nexteer's arbitration costs, and (4) $4,981 in Nexteer's fees for administrative secretary's services.  The Arbitrator also awarded Nexteer a royalty of 4.5% on all sales of the KPJ halfshafts and future sales of any premium joint product derivative of KPJ

after November 30, 2015.  Early last year, Nexteer filed a motion to confirm the Arbitration Award, and erae filed a motion to stay confirmation pending review proceedings in Singapore.

On May 16, 2017, this court  confirmed the monetary award in the amount of $5,876,666 for disgorgement of past sales of the KPJ halfshaft, legal fees, arbitration costs, and costs of the administrative secretary's services, and the 4.5% royalty for all future sales of the KPJ halfshafts, but the court did not confirm the award as it related to the 4.5% royalty award for the sales of any premium joint product *derivative* of KPJ from November 30, 2015.  Instead, the court held the Arbitral Award of the 4.5% royalty on future sales of any premium joint product *derivative* of KPJ from November 30, 2015, in abeyance pending the ongoing Singapore proceedings. The issue pending before the Singapore High Court was whether the derivative royalty award should be set aside.  As a condition of the stay, erae was required to post a $3,000,000 bond.  The stay and bond order were permitted pursuant to Article VI of the New York Convention, codified at 9 U.S.C. §§ 201-08, which provides:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e) [of the country in which, or under the law of which, that award was made], the authority before which the award is sought to be relied upon may, if it considers it proper,

adjourn the decision on the enforcement of the award and may
also, on the application of the party claiming enforcement of the
award, order the other party to give suitable security.

(Doc. 48-2 at PageID 2360).  The reason for the bond was a concern over

erae's ownership and solvency and thus, concern over whether erae would

be able to pay the derivative royalties awarded by the Arbitrator in the

event that his award for derivative royalties was confirmed in the Singapore

proceedings.  (Doc. 67 at 32).  The amount was determined to be

$3,000,000 because of the court's best estimate of the potential value of a

derivative royalty owing for the estimated 18-months that the Singapore

review period was expected to last.  Based on estimates that erae may be

selling $65.5 million in premium joint products in 2018, which would amount

to a derivative royalty of $2.9 million (based on 4.5% royalty fee) if the

products were derivative, it appears that the amount deposited may be a

fair estimate of derivate royalties owing for 2018.  Of course, erae disputes

that the product it is now selling is derivative of the KPJ.

On June 2, 2017, the court entered a stipulated order permitting erae

to deposit $3,000,000 with the Clerk of the Court in lieu of posting a bond

and the deposit was made on June 7, 2017.  This court ordered that the

deposited funds could "only be withdrawn upon further order of the court."

(Doc. 72).  During the Singapore set aside proceedings, erae emphasized

the prejudice it would suffer if the derivative royalty award were upheld because it was developing a new premium joint for sale beginning in 2018. erae estimated that sales for the new joint in 2018 alone could exceed $65.5 million and total as much as $304 million for the four years between 2018 and 2021.

On September 4, 2017, the Singapore High Court entered an order dismissing erae's application to set aside the derivative royalty provision. erae informed Nexteer that it would not be appealing the Singapore ruling, and that it was willing to stipulate to the entry of an order confirming the derivative royalty provision of the Award. erae requested Nexteer stipulate to the return of the deposited funds. Nexteer responded that it would not consent to the release of the funds unless erae provided information about its premium joint products from November 30, 2015 to present, including an affidavit listing, among other things, all halfshaft and premium joint products manufactured or sold by erae from November 30, 2015 through the second quarter of 2017, and seeking an affidavit if erae contended it had no derivative products.

On October 12, 2017, the parties stipulated to lift the stay and to confirm the derivative royalty provision in the Arbitration Award and stipulated to the entry of a Second Amended Judgment. (Doc. 80). The

Second Amended Judgment provides, among other things, that erae shall pay Nexteer "a royalty of 4.5% on all sales of the KPJ halfshafts as well as any premium joint product derivative of the KPJ from November 30, 2015." (Doc. 81 at PgID 5269). In addition, the Second Amended Judgment requires erae to "furnish adequate proof of its halfshaft and premium joint product sales 30 days prior to the due date for each quarterly royalty payment." (Doc. 81, PgID 5270). Nexteer alleges that erae has not complied with this requirement. The Second Amended Judgment also provides for an audit procedure to confirm compliance with the royalty provision and derivative royalty provisions of the Arbitral Award. Specifically, that Judgment provides:

> It is further **ORDERED AND ADJUDGED** that Nexteer shall have the right to audit the sales and other financial records of erae Automotive and companies under erae Automotive's control to confirm compliance with the obligation to pay royalties pursuant to the Award. Any such audit is to be conducted by a mutually acceptable independent auditor, with the costs of the audit to be evenly split by the parties. Erae Automotive shall maintain the records of its sales of the KPJ halfshafts or any premium joint product derivative of KPJ for a period of at least five years, and make them available to the auditor during normal business hours subject to a three-day written notice.

(Doc. 81 at PgID 5270). Since the Second Amended Judgment was entered, erae has paid a total of over $6,500,000 to Nexteer.

Specifically, on August 7, 2017, pursuant to a payment arrangement to which the parties agreed, erae wired $6,321,483.72 to Nexteer.  This payment covered (1) the lump-sum portion of the judgment (including interest), and (2) erae's KPJ royalties and interest through March 31, 2017.  In addition, erae withheld and paid to the Korean government $816,435.42 in income taxes on Nexteer's behalf.  On September 29, 2017, erae paid an additional $300,645.12 in royalties on its sale of KPJ halfshafts for the second quarter of 2017.

Nexteer argues that erae owes it an additional $866,042 in amounts that erae withheld as taxes[1] and that it owes some $200,000 in attorney's fees incurred in this court in confirmation and enforcement proceedings.  There is no pending motion as to the propriety of the withholding taxes, but there is a motion regarding attorney's fees.

In addition, Nexteer argues that by erae's own projections, erae will be selling a new joint in 2018 and beyond with sales expected to exceed $65.5 million in 2018 alone, and almost $304 million from 2018 to 2021.  A question of fact exists as to whether those sales involve products derivative of the KPJ half-shaft that was the subject of the Arbitral Award.

---

[1] It is unclear why there is a $49,607 discrepancy between the parties' figures for withholding taxes.

## III. Analysis

### A.    erae's Motion to Withdraw $3,000,000 Deposited with the Court

The purpose of the Article VI stay provision pursuant to the New York Convention, "when coupled with the Article VI bond provision," is to "provide a judicially effective way of allowing litigation attacking an award to continue without endangering the financial interests of the award recipient." *Higgins v. SPX Corp.*, No. 1:05-CV-846, 2006 WL 1008677, at *3 (W.D. Mich. Apr. 18, 2006). The giving of a security under the New York Convention pending foreign appellate procedures is akin to a supersedeas bond under Federal Rule of Civil Procedure 62(d) which "serves the dual role of protecting the non-appealing party 'from the risk of a later uncollectible judgment'" and also "'provides compensation for those injuries which can be said to be the natural and proximate result of the stay.'" *Tri Cty. Wholesale Distrib., Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 172 (S.D. Ohio 2015) (quoting *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir.1988)). A bond pending appeal "secures the judgment against insolvency of the judgment debtor." *Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006). The posting of a security in connection with a stay pending appellate review procedures also serves the purpose of protecting the status quo pending the appeal. *Jack Henry & Assocs., Inc. v. BSC,*

*Inc.*, 753 F. Supp. 2d 665, 673 (E.D. Ky. 2010), *aff'd,* 487 F. App'x 246 (6th Cir. 2012). The Sixth Circuit has observed that "the amount of the bond usually will be set in an amount that will permit satisfaction of the judgment in full, together with costs, interest and damages for delay." *U.S. ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 151 (6th Cir. 2010) (internal quotation marks and citations omitted). In general, the security is not returned until the judgment is satisfied in full. *Goss Int'l Corp. v. Tokya Kikai Seisakusho, Ltd.*, No. 00-CV-35-LRR, 2006 WL 4757279, at *3 (N.D. Iowa Aug. 9, 2006) (collecting cases).

Based on the Arbitral Award, the Singapore High Court's ruling, and the Second Amended Judgment entered in this case, it is a matter of settled law that erae owes Nexteer 4.5% in royalties for the sale of any products derivative of the KPJ premium half-shaft joint. Despite the finality of this legal determination, the controversy between the parties remains very much alive based on a factual dispute as to whether any of erae's new products are derivative of the KPJ half-shaft joint. It is a multi-million dollar dispute as erae is selling joints this year alone that could total as much as $65.5 million. Nexteer is attempting to use the monies erae deposited with the court as leverage to compel erae to provide the information needed to determine if erae is selling any derivative products. Indeed, erae's reply

brief in support of its motion now before the court suggests a certain reticence on erae's part. In that reply, erae states that "erae has said it will respond [to Nexteer's request for information about the manufacture or sale of any premium joint products derivative of the KPJ] in due course," "this information is forthcoming," and "there is no evidence that Nexteer is entitled to any derivative royalties at this time, or that it ever will be."

While there is no doubt that Nexteer is entitled to information about erae's sale of potentially derivative products, the Second Amended Judgment provides Nexteer with an avenue for obtaining that information: an audit. Nexteer, however, argues that an audit is not an adequate remedy because it will not preserve funds, and it is not clear that the audit will help Nexteer to identify premium joint products derivative of the KPJ. There are two answers to these objections. First, erae points out that it has paid nearly $7,000,000 to Nexteer since August, 2017. erae has not, however, otherwise responded to Nexteer's allegations that erae may be insolvent. Nexteer claims that it still lacks information about erae's financial wherewithal after the sale of its thermal business, which was the justification of the original bond requirement.

The question then arises, who has the burden of proof regarding whether erae is fully able to satisfy the judgment, as it alleges, or facing

insolvency as Nexteer alleges.  An answer can be found in cases

interpreting the supersedeas bond requirement pursuant to Rule 62(d).

There, courts have held that in the typical case, a judgment debtor must

post a supersedeas bond in order to obtain a stay of a monetary judgment

pending appeal.  *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1559 (10th

Cir. 1996).  But district courts retain discretion to waive the bond

requirement in certain situations, including cases where the judgment

debtor "objectively demonstrates a present financial ability to facilely

respond to a money judgment and presents to the court a financially secure

plan for maintaining that same degree of solvency during the period of an

appeal."  *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey

Stuart*, 600 F.2d 1189, 1190 (5th Cir. 1979).  Many courts, including the

Sixth Circuit, have waived the bond requirement where the judgment debtor

proves overwhelmingly its financial ability to pay the money judgment.  *See

Arban v. West Publ. Corp.,* 345 F.3d 390, 409 (6th Cir. 2003) (affirming

district court's decision to grant stay without requiring a bond where

defense counsel represented that defendant's revenues were

approximately $2.5 billion and plaintiff's money judgment was a mere

pittance of that amount);  *Dillon v. City of Chicago*, 866 F.2d 902, 904-05

(7th Cir. 1988) (court may consider "whether 'the defendant's ability to pay

the judgment is so plain that the cost of a bond would be a waste of money'") (quoting *Olympia Equip. of Western Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986)); *Frommert v. Conkright*, 639 F. Supp. 2d 305, 313-14 (W.D.N.Y. 2009) (requiring a bond would be a waste of money where defendant showed the Plan had ample assets to pay any judgment).

In light of the above cited precedent, the question then becomes whether erae has sufficiently demonstrated that it is able to pay any judgment on the derivative royalty award such that it should be allowed to withdraw the $3,000,000 it previously deposited with the court. erae relies on the fact that it has paid nearly $7,000,000 to date. On the other hand, Nexteer relies solely on unsupported allegations that erae may be insolvent. Also, it is significant that in order for erae to be liable for derivative royalties, erae must in fact be selling products derivative of the KPJ. Thus, because any liability depends on erae's success in the marketplace, liability itself may depend on erae's solvency. Presumably, if erae has $65 million in sales in 2018, it will have the ability to pay a 4.5% royalty, if its product is derivative. Considering that erae has paid nearly $7,000,000 in non-derivative damages, and Nexteer has come forward with no proof that erae will not be able to fully satisfy any derivative royalty owing, erae is entitled to a return of the deposited funds.

Second, the court considers Nexteer's argument that the audit is an insufficient method for gathering information about erae's potential manufacture and sale of derivative products. Even if the audit alone is not satisfactory, Nexteer may seek to enforce the Arbitration Award through other means, such as a motion to enforce the court's judgment, and its ability to learn about such derivative products need not be linked to the deposited funds.

Next, the court considers Nexteer's request that the deposited funds be used to make up the amounts erae withheld as taxes in the amount of $866,042, and its request for attorney's fees and costs of nearly $200,000. The bond was set as a security solely for the derivative royalty award. The withholding taxes issue is not properly before the court at this time. Similarly, the attorney's fee request is before the court in a separate motion. It would not be appropriate to use the deposited funds for these purposes, as that is not the reason for the bond pending appeal, and there is no evidence that erae will not pay these amounts if so ordered.

This case is atypical as there is no sum certain for the derivative royalty award. In the usual case, if a judgment debtor loses his appeal, the security given to stay the judgment pending the appeal is used to satisfy the affirmed judgment. But in this case, a fact issue exists as to the

amount, if any, owed for the sale of products derivative of the KPJ. Based on this unusual scenario, and erae's payment of nearly $7,000,000 to date, and lacking any evidence that erae will not be able to pay any derivative royalty owing, the court shall order a return of the deposited funds.

## B.  Nexteer's Motion for Attorney's Fees and Costs

The second matter before the court is Nexteer's motion for attorney's fees and costs incurred in seeking to confirm the Arbitration Award. It should be noted that the Arbitrator awarded Nexteer $2,103,572 in attorney's fees in the underlying proceedings, which amounted to 80% of the fees sought. Nexteer now seeks $183,816.03 in attorney's fees based on 430 hours of attorney time and $870.58 in costs, for time spent litigating in this court only, and not before the Arbitrator. Under the American Rule, a prevailing party cannot ordinarily recover fees except where provided for by statute, court rule, contract, or common law exception. *Farley v. Eaton Corp.*, 697 F. App'x 450, 451 (6th Cir. 2017). Here, Nexteer argues that attorney's fees are proper pursuant to the parties' underlying contracts, and under the theory that erae instigated the Singapore set aside proceedings and resisted confirmation of the Arbitral Award in bad faith. Nexteer's argument fails under either theory.

First, the court considers Nexteer's argument that the parties'
agreement provides the district court with the authority to impose attorney's
fees incurred in confirmation of the Arbitral Award. Specifically, Nexteer
relies on § 6.11(b) of their Exclusive Manufacturing & Supply Agreement
which provides:

> Delphi and KDAC [now erae] acknowledge and confirm
> that the arbitration award shall be final and binding upon all
> Parties, shall not be subject to any appeal, and shall deal
> with the question of costs of arbitration and all matters
> related thereto. Judgment upon the arbitration award may
> be entered in any court having jurisdiction over the Party
> against whom enforcement is sought or such Party's
> property. The forgoing, however, shall not preclude the
> Parties from applying for any preliminary or injunctive
> remedies under applicable laws for any purpose, including,
> but not limited to, securing the subsequent enforcement of
> an arbitration award.

(Doc. 42-5 at PgID 2153, § 6.11(b)). The parties' agreement provides that
their agreement is governed by Michigan law. *Id.* at PgID 2152, ¶ 6.10.
Thus, the court is guided by Michigan law regarding contract construction.
The Michigan Supreme Court has held that a court's primary purpose in
construing a contract is to afford the meaning the parties intended. *Quality
Prod. & Concepts Co. v. Nagel Precision Inc.*, 469 Mich. 362, 375 (6th Cir.
2003). In interpreting a contract, the court is to give the terms of the
agreement their plain and ordinary meaning. *Coates v. Bastian Bros., Inc.*,
276 Mich. App. 498, 503 (2007). Where the terms of a contract are

unambiguous, the court must "construe and enforce the contract as written" because "an unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Quality Products*, 469 Mich. at 375.

Nexteer argues that the language set forth in their agreement that the arbitration award would "deal with the question of costs of arbitration and all matters related thereto" is broad enough to confer authority on this court to award attorney's fees incurred in the enforcement proceedings here. Nexteer's argument lacks merit. A plain reading of the contractual language is that it is the Arbitrator who had the authority to consider the question of costs of arbitration and all matters thereto. In fact, the Arbitrator exercised this authority and awarded Nexteer attorney's fees in the amount of over $2,000,000. The contractual language explicitly provides that it is the "arbitration award" which "shall deal with the question of costs of arbitration and all matters related thereto." Later in the arbitration provision, the contract provides that "Judgment upon the arbitration award may be entered in any court having jurisdiction over the party against whom enforcement is sought." This is the first time the arbitration provision discusses the role of the courts, as opposed to the role of the Arbitrator, which is the subject of the first sentence of § 6.11(b).

The Sixth Circuit held that a similar contractual provision failed to authorize the district court to award attorney's fees for post-arbitration enforcement proceedings. *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 610 F. App'x 464, 468 (6th Cir. 2015). In *Crosseville,* the contractual provision in dispute provided:

> Miscellaneous: This Agreement shall be governed by laws of the State of Connecticut. Any dispute arising out of or in connection with this Agreement, if not otherwise resolved, shall be determined by arbitration in New Haven County, Connecticut, in accordance with the Rules of American Arbitration Association and it is the express desire of the parties that the prevailing party be awarded costs and attorneys' fees and the award be entered as a judgment in any jurisdiction in which the non-prevailing party does business.

*Id.* The Sixth Circuit ruled that the agreement only authorized the arbitrator to award attorney's fees and costs during arbitration, and that it only authorized the district court to enter the award as a judgment. *Id.* The same result should be reached here based on analogous contract language.

Nexteer's complaint that *Crosseville* is an unpublished decision and thus, lacks precedential value, is somewhat perplexing given that Nexteer relies on numerous unpublished opinions as well as precedent from outside the Sixth Circuit in its initial brief and reply brief. Nexteer's attempts to distinguish *Crosseville* because it involved Connecticut law is also not

convincing, as the court is aware of no difference between Connecticut law and Michigan law governing contract interpretation, with both states requiring that the court give the terms of the contract their plain and ordinary meaning, and where the language is unambiguous, give the contract effect according to its terms. *Cf. Cantonbury Heights Condominium Ass'n, Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734-35, 873 A.2d 898, 904 (2005) *with Quality Products*, 469 Mich. at 375. Finally, the court does not find that the use of the terms, "matters related thereto" in the parties' agreement distinguishes this case from *Crosseville,* as that language is clearly directed to the authority of the Arbitrator. In sum, the parties' agreement does not confer authority on this Court to award post-arbitration attorney's fees.

Next, the Court considers whether attorney's fees should be awarded based on erae's alleged bad faith in not paying the amounts it owed under the judgment sooner. Again, the court finds that attorney's fees are not warranted under this theory either. A brief review of the timeline below is appropriate here. The Arbitral Award was entered on December 28, 2016. erae had until March 28, 2017 to begin set aside proceedings in Singapore pursuant to the New York Convention and SIAC rules. Nexteer filed a motion to confirm the Arbitration Award in this court on January 17, 2017.

On February 23, 2017 erae responded by filing a motion to stay the enforcement of the entire Arbitral Award pending its anticipated application to set aside the Arbitral Award before the Singapore High Court.  On March 27, 2017, erae filed its set aside application.  (Doc. 56).  In ruling on Nexteer's motion to confirm the Arbitral Award and erae's response and motion to stay, the court reviewed the papers filed in the Singapore High Court, and the affidavit of erae's head of the legal department which explained the basis of the review proceedings pending in Singapore.  (Doc. 56 and Exhibits).  On May 16, 2017, the court confirmed the Arbitral Award except for that portion of the Award which addressed derivative royalties, which the court determined was the only potentially meritorious issue before the Singapore High Court.  Although the court opined that this narrow issue was the only possible basis for success by erae in the Singapore set aside proceedings, erae had argued to set aside the entire Award in its papers filed with the Singapore High Court.

The court then entered a partial judgment on June 2, 2017.  On June 19, 2017, pursuant to the parties' stipulation, the court entered an Amended Judgment revising the monetary portion of the original judgment to account for the updated currency conversion rates and calculations.  On June 21, 2017, Nexteer notified erae that it intended to issue subpoenas

and garnish erae's accounts. (Doc. 88, Ex. C. PgID 5548). On this same date, erae's counsel notified Nexteer that it intended to comply with the Award and offering a payment arrangement. (Doc. 85, Ex. 10, PgID 5478-79). On June 30, 2017, the parties entered into a Tolling and Standstill Agreement to preserve Nexteer's right to seek attorney's fees and costs after the final adjudication of the Singapore set aside proceedings. On the same date, the court entered the parties' stipulated order extending the time for Nexteer to file its motion for attorney's fees and costs to 30 days after completion of the proceedings to set aside the arbitration award in the Singapore High Court or 30 days after Nexteer's written notice to erae, whichever occurred earlier. (Doc. 75).

After a series of e-mails between the parties regarding the wire transfer of funds and calculation of interest, on August 7, 2017, erae paid $6,321,483.72 which covered the lump-sum portion of the judgment (including interest) as well as erae's KPJ royalties and interest through March 31, 2017. On September 4, 2017, the Singapore High Court dismissed erae's application to set aside the Arbitral Award and required erae to pay "S$25,000,[2] plus reasonable disbursements" to cover part of Nexteer's fees and costs incurred in the Singapore proceedings. On

---

[2] The "S" refers to Singapore currency.

September 15, 2017, erae notified Nexteer it would not appeal the Singapore ruling and would stipulate to the entry of an order lifting the stay and confirming the derivative royalty provision of the Award.  On September 29, 2017, erae paid another $300,645.12 in royalties on its sales of the KPJ halfshafts for the second quarter of 2017.  On October 12, 2017, the parties entered a stipulation to entry of the derivative royalty provision of the Award, and a Second Amended Judgment was filed.

Although the New York Convention does not expressly authorize an award of attorney's fees in a proceeding to confirm a foreign arbitral award, it is well settled that the Court retains inherent power to assess attorney's fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) (internal quotation marks and citation omitted).  The Sixth Circuit has recognized that an unjustified refusal to pay an arbitral award may constitute bad faith justifying the imposition of attorney's fees against the recalcitrant party, but cautioned that "'[a]n  award of attorney's fees . . . is an extreme sanction, and must be limited to truly egregious cases of misconduct.'"  *Crossville*, 610 F. App'x at 470 (quoting *Monroe Auto. Equip. Co. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 981 F.2d 261, 270 (6th Cir. 1992)).  This case does not involve an

egregious case of misconduct.  erae delayed payment pending set aside proceedings in Singapore which it was entitled to bring.  Although Nexteer argues the set aside proceedings were meritless and a back door around that parties' agreement that the Arbitral Award would be final and binding and not subject to any appeal, the delay caused by those proceedings does not amount to the sort of egregious misconduct that courts have found warrants the imposition of attorney's fees.  *See Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No.* 8, 802 F.2d 247, 255 (7th Cir. 1986) (awarding fees where company had no grounds to challenge the arbitrator's decision in court where company filed suit after the statute of limitations had run); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. United Farm Tools, Inc., Speedy Mfg. Div.*, 762 F.2d 76, 77 (8th Cir. 1985) (awarding fees where defendant failed to show any grounds for failure to comply with arbitral award and did not even act to have award set aside); *Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 3 (D.D.C. 2013) (awarding fees where arbitral award over a year old and defendant failed to even respond to plaintiff's motion to enforce the arbitration award).

When this court ruled that the Singapore set aside proceedings could not be used to stay enforcement of the Arbitral Award as to the non-derivative portion of the Award, erae paid nearly $7,000,000 within a little over a month after judgment entered. During the little over a month that elapsed between entry of the judgment and payment, erae's counsel was in communication with Nexteer's counsel, discussing the calculation of royalties, interest, and the method and manner of wiring the funds. Nexteer complains the amounts paid are inadequate because erae improperly withheld amounts for taxes. Nexteer also complains that erae has acted in bad faith because it has failed to disclose information related to the derivative royalty provision, and delayed confirmation of the award by pursuing set aside proceedings in Singapore.

Nexteer has already been compensated for attorney's fees incurred in responding to erae's set aside proceedings in Singapore as that court ordered erae to pay Nexteer S$25,000. Given the timeline outlined above, erae's conduct is not so egregious as to warrant the harsh sanction of the nearly $200,000 Nexteer is now seeking in attorney's fees. erae pursued the set aside proceedings for which it was entitled under the New York Convention and the SIAC Rules, and delayed payment only until this court

rejected its motion to stay enforcement of the Arbitral Award as to non-derivative damages. Nexteer claims erae failed to make payment in full and improperly withhold certain taxes, but that issue is not properly before this court at this juncture. Also, while Nexteer is correct that erae must provide information regarding its products derivative of the KPJ, that dispute is not presently before this court. In sum, because the parties' contract does not provide for attorney's fees for post-arbitral confirmation proceedings, and erae did not act in bad faith in delaying payment until this court decided its motion to stay confirmation of the award pending set aside proceedings pending in Singapore, Nexteer's motion for attorney's fees shall be DENIED.

## IV. Conclusion

For the reasons set forth above, erae's motion for withdrawal of $3,000,000 deposited with the Clerk of the Court (Doc. 79) is GRANTED.

IT IS FURTHER ORDERED that Nexteer's motion for attorney's fees (Doc. 77) is DENIED.

IT IS FURTHER ORDERED that erae submit a proposed Withdrawal Order in accordance with Local Rule 67.1(b) stating the name, address and corresponding social security or employer identification number for each

recipient and the exact amount of principal and percentage of interest to be paid.

**IT IS SO ORDERED.**

Dated:  March 13, 2018

s/George Caram Steeh
GEORGE CARAM STEEH

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 13, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk
